## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHAWN COLLINS, MELISSA WARD and AFFILIATE SUMMIT CORPORATION, | : : : : | |
| Plaintiffs, | : : | Hon. Dennis M. Cavanaugh |
| vs. | : : | **OPINION** |
| RYAN PHELAN and UNIVERSAL PROMOTIONS GROUP, INC. | : : : | Civil Action No.: 06-CV-1704 (DMC) |
| Defendants. | : : : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>

This matter comes before the Court upon a motion by Ryan Phelan and Universal Promotions Group, Inc. ("Defendants"), to dismiss the Complaint filed by Shawn Collins, Melissa Ward, and Affiliate Summit Corporation ("Plaintiffs"), for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the United States District Court for the District of Nebraska. No oral argument was held pursuant to Rule 78 of the Federal Rule of Civil Procedure. For the following reasons, Defendant's motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and for improper venue is **denied** and Defendant's motion to transfer venue is **granted.**

## I. <u>Background</u>

Plaintiff Affiliate Summit Corporation ("ASC") has its principal place of business in Summit, New Jersey. (Compl. at ¶ 3). Two members of ASC's Board of Directors are Plaintiffs Shawn Collins ("Collins") and Melissa Ward ("Ward"). (Compl. at ¶ 38). Collins is a resident

of New Jersey and Ward is a resident of Florida.  (Compl. at ¶¶ 1-2).  Defendant Phelan, the President and Chief Executive Officer of UPG, is a resident of Nebraska and Defendant UPG is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  (Affidavit of Ryan Phelan ("Phelan Affidavit") at ¶ 6, Compl. at ¶¶ 4-5).

In May 2003, Collins, Ward, and Phelan decided to form a business for the purpose of holding conferences designed to foster marketing and networking between companies in related industries.  (Defendants' Brief in Support of its Motion to Dismiss or Transfer ("Def. Br.") at 6).  The parties signed a Personal Equity Agreement stating Collins, Ward, and Phelan would operate ASC under the ownership of UPG.  (Def. Br. at 7).

The first event organized and conducted by the parties was an affiliate marketing conference at Baruch College in New York City in November 2003.  (Id.).  At the event, the parties distributed gift bags to the attendees.  (Def. Br. at 7-8).  The gift bags contained products provided by sponsors of the event.  (Def. Br. at 8).  The products were shipped to and packaged at Collins' New Jersey home a few days before the event.  (Id.)  Approximately 200 people attended the November 2003 event.  (Plaintiffs Brief in Opposition to Defendant's Motion to Dismiss or Transfer Venue ("Pl. Br.") at 3).  Each attendee paid $75.00 to be admitted to the event.  (Id.)

The second event, funded by profits gained from the first event, took place aboard a Carnival Cruise in June 2004.  (Id.)  The cruise ship departed from New York City, sailed to Nova Scotia, and returned to New York City.  (Def. Br. at 8).  A few days before the ship's departure, Phelan traveled from his home in Nebraska to Collins' home in New Jersey to help package the gift bags that would be distributed to the event's attendees.  (Def. Br. at 8-9).

2

In September 2004, Collins and Ward sent Phelan an e-mail stating they no longer wished to work with Phelan and UPG.  (Pl. Br. at 4).  Shortly thereafter, Collins and Ward began planning a third event in Las Vegas without Phelan's assistance.  (Id.).  On May 31, 2005, upon learning of the Las Vegas event's success, Phelan contacted Collins and Ward and demanded to be "bought out" of his "ownership interest" in ASC.  (Id.)  Collins and Ward currently seek declaratory judgment stating Phelan and UPG have no ownership interest in ASC.  (Compl. at ¶ 9).

## II.  Discussion

### A.  Standard for Personal Jurisdiction

New Jersey's long-arm statute permits a Federal District court to exercise personal jurisdiction over non-resident defendants to the extent permitted under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  See New Jersey Rules of Court, § 4:4-4; see also Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971) (New Jersey's long-arm jurisdiction extends "to the uttermost limits permitted by the United States Constitution.")  In order for a state to exercise personal jurisdiction over a non-resident defendant, the plaintiff must establish that the defendant has "minimal contacts" with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

As part of the personal jurisdiction inquiry, a court must determine whether it has general or specific jurisdiction over the defendant.  M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 205 F. Supp. 2d 306, 312 n.8 (D.N.J. 2002).  Even if the lawsuit does not arise out of or is not related to the defendant's contacts with the forum state, a court may still exercise general

3

jurisdiction over the defendant if the defendant maintains sufficient continuous and systematic contacts with the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.15 (1985). For the purpose of determining whether general jurisdiction exists, New Jersey courts have stated that "the continuity of a defendant's activities is accorded more significance than the quantum of activities."  Eason v. Linden Avionics, Inc., 706 F. Supp. 311, 323 (D.N.J. 1989).

In order for a court to exercise specific jurisdiction over the defendant, the defendant's contacts with the forum state must "arise out of, or relate to the cause of action."  Burger King, 471 U.S. at 472-473.  The court must determine that: "(1) [the] defendant purposely direct[ed] its activities at residents of the forum; (2) the claim arises out of or relates to those activities, and (3) jurisdiction is constitutionally reasonable and fair."  LG Electronics, Inc. v. First Int'l Computer, 138 F. Supp. 2d 574, 588 (D.N.J. 2001) (citing Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997)).

### B.  Standard for Transferring Venue

A civil action where subject matter jurisdiction is founded only on diversity of citizenship may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(a).  "A defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

4

28 U.S.C. § 1404(a). When determining whether to transfer a case to a different district, a court should consider:

> (1) location of [the]... defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district... involved; and (10) any other special elements which might affect the transfer.

In re United States, 273 F.3d 380, 387-388 (3d Cir. 2001) (citing Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-244 (1964)). Generally, a plaintiff's choice of forum is accorded great weight. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). However, deference to the plaintiff's selected forum may be overcome "if the private and public interest factors [listed above] clearly point toward trial in an alternative forum." Id.

### III. Analysis

**A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue**

**1. This Court Does Not Have General Jurisdiction Over Phelan and UPG**

Phelan argues that this Court lacks general jurisdiction over him and UPG because he did not have sufficient continuous and systematic contacts with the state of New Jersey during his partnership with Collins and Ward. (Pl. Br. at 16). Phelan asserts in his affidavit that he flew to New Jersey two days prior to the June 2004 cruise event and helped Collins and Ward package the gift bags for the event at Collins' New Jersey home. (Phelan Affidavit at ¶ 26). Phelan also claims that he spent no more than ten hours in New Jersey prior to the cruise ship's departure from New York City. (Phelan Affidavit at ¶ 28).

However, Phelan fails to recognizer other significant contacts he had with the state of New Jersey.  Specifically, approximately fifteen of the two hundred attendees (individuals and corporations) at the November 2003 event were New Jersey residents.  (Pl. Reply Br. at 9).  Also, the partnership solicited individuals and businesses to attend this event and Phelan collected the admissions fees from the attendees.  (Pl. Br. at 3).  Phelan's presence in New Jersey was "not fortuitious, but [was] the result of deliberate efforts."  Hendrickson v. Reg O Co., 657 F.2d 9, 15 (3d Cir. 1981).  Therefore, it is possible that Phelan "could [have] reasonably anticipate[d] being involved in litigation" in New Jersey.  Id.

While the solicitation of sponsors and attendees for the November 2003 event was "central" to the business created by Phelan, Collins, and Ward, Phelan's contacts with New Jersey cannot be considered continuous or systematic.  Phelan's physical presence in New Jersey during his partnership with Collins and Ward was limited to ten hours over a two-day period prior to the departure of the cruise ship hosting the June 2004 event.  The record indicates that Phelan's participation in the solicitation of New Jersey residents and corporations occurred only for one event, the November 2003 event.  Because Phelan's contacts were limited in duration, and therefore, were not continuous and systematic, this Court lacks general jurisdiction over Phelan and UPG.

**2.  This Court Has Specific Jurisdiction Over Phelan and UPG**

While Phelan's contacts with New Jersey were not continuous and systematic, his contacts were sufficiently related to the present cause of action to afford this Court specific jurisdiction over Phelan and UPG.  The first prong of the specific jurisdiction analysis is determining whether Phelan performed "some act by which [he] purposefully avail[ed] [himself] of the privilege of conducting activities within the forum."  Kultur Int'l Films Ltd. v. Covent

6

Garden Pioneer, FSP, Ltd., 860 F. Supp. 1055, 1057 (D.N.J. 1994) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Intentionally conducting business with forum state residents will satisfy the "purposeful availment" requirement.  Toys "R" Us, Inc. v. Step Two, S.A., Imaginarium Net, S.L., 318 F.3d 446, 451-452 (3d Cir. 2003).  In this case, Phelan's contribution to soliciting fifteen New Jersey residents and corporations to attend the November 2003 event clearly satisfies the "purposeful availment" requirement.

The second prong of the specific jurisdiction analysis requires the Court to determine whether the current cause of action arises out of, or relates to Phelan's contacts with New Jersey. The  "arises out of or relates to" language demonstrates "flexibility and signal[s] a relaxation of the applicable standard from a pure 'arise out of standard.'" Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001).  Here, Phelan's contacts with New Jersey were limited to soliciting New Jersey residents and corporations to attend the November 2003 event and collecting the admission fees from all attendees, including those from New Jersey.  The specific issue raised by Plaintiffs' complaint was whether Phelan retained any ownership interest in ASC following the termination of his partnership with Collins and Ward.  (Complaint at ¶ 50).  Because Phelan's activities prior to the termination of his partnership with Collins and Ward are sufficiently related to any ownership interest he claims to have in ASC, the second prong of the specific jurisdiction analysis is satisfied.

The third and final prong of the specific jurisdiction analysis requires the Court to determine whether this Court's exercise of specific jurisdiction over Phelan comports with the due process concepts of fair play and substantial justice.  "[The] courts of New Jersey have exercised in personam jurisdiction wherever possible, with a liberal and indulgent view, if the facts reasonably support the presence of flexible concepts of 'fair play and substantial justice.'"

<u>Apollo Tech Corp. v. Centrosphere Indus. Corp.</u>, 805 F. Supp. 1157, 1181-1182 (D.N.J. 1992). In this case, Phelan formed a partnership with Collins and Ward, knowingly and intentionally conducted business with New Jersey residents and corporations, and earned a profit from his participation in planning events attended by New Jersey residents and corporations.  (Pl. Br. at 12).  For this reason and all the reasons stated, this Court has specific personal jurisdiction over Phelan and UPG.

### 3.  This Court is a Proper Venue

As stated above, a civil action founded on diversity of citizenship may be brought in a judicial district where at least one of the defendants "is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(a).  For the purpose of making a venue determination, a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c). Because it has already been established that this Court has personal jurisdiction over Phelan and UPG, the District Court for the District of New Jersey is a proper venue for this cause of action.

### B.  Defendants' Motion to Transfer

Plaintiffs Collins and Ward filed this cause of action in the District Court for the District of New Jersey, which is a proper venue.  As a Defendant in this action, Phelan "bears the burden of establishing that a balancing of [the private and public] interest factors weigh in favor of transfer... [and] the case would be better off transferred to another district."  <u>In re United States</u>, 273 F.3d at 388 (quoting <u>In re Balsimo</u>, 68 F.3d 185, 187 (7th Cir. 1995)).  Because both the private and public interest factors weigh in favor of transfer, Phelan's motion to transfer to the District Court for the District of Nebraska is granted.

It is clear from the parties' submissions that it will much more convenient for the parties if this case is transferred to Nebraska.  Phelan is a resident of Nebraska and UPG is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  (Compl. at ¶¶ 4-5).  Furthermore, Ward is a resident of Florida and it would not be any more or less inconvenient for her to travel to Nebraska than for her to travel to New Jersey in order to appear as a witness in this case.  (Pl. Br. at 25).  The only party that would be inconvenienced by having to travel to Nebraska to litigate this case would be Collins, a New Jersey resident.  (Complaint at ¶ 1).

Also, it will be more convenient for the witnesses if this case is transferred to Nebraska.  Most of the witnesses that Phelan intends to call to establish his ownership interest in ASC are residents of Nebraska.  (Def. Br. at 24).  These witnesses include the Omaha, Nebraska-based travel agent who made travel arrangements for the June 2004 event attendees and the banker at First Westroads Bank, a bank located in Omaha, Nebraska, who set up the ASC bank account where the June 2004 event admission fees were deposited.  (Id.).  In addition, many of the documents concerning the June 2004 event are maintained by Phelan in Nebraska.  (Def. Br. at 25).  These documents include promotional and transactional materials referencing ASC's relationship with UPG and e-mails concerning the June 2004 event, which are maintained on a server owned by UPG.  (Def. Br. at 24).

Finally, Phelan and UPG will not be able to bear the expense of traveling to New Jersey to litigate this case.  Revenue generated from www.promocode.com, a website operated by Phelan and UPG, was only $600 during 2005.  (Def. Br. at 25).  This is UPG's only source of income.  (Id.).  If Phelan and UPG are forced to go to New Jersey to litigate this case, they will suffer unnecessary financial hardship that can only be avoided if the case is litigated in

Nebraska.  For this reason and all the reasons stated, venue is transferred to the District Court for the District of Nebraska.

## IV.  <u>Conclusion</u>

For the reasons stated, it is the finding of this Court that Defendants' motion to dismiss for lack of jurisdiction and for improper venue is **denied** and Defendants' request to transfer venue is **granted.**  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        June 29, 2006
Original:    Clerk's Office
cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File